## NORGE CORPORATION v. LONG ISLAND R. CO.

### No. 391.

Circuit Court of Appeals, Second Circuit.

May 6, 1935.

Louis J. Carruthers, of New York City (Lord, Day & Lord, Parker McCollester, and William McNamara, all of New York City, of counsel), for appellant.

Ernie Adamson, of New York City, for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The order appealed from struck out appellant's answer to an amended complaint and awarded summary judgment against it under section 476 of the Civil Practice Act, and rules 103 and 113 of the Rules of Civil Practice of the State of New York. Appellant also asked for a reversal of an order denying its motion for reargument of the motion for summary judgment. The action is to recover alleged overcharges made by appellant for interstate carriage of 66 carloads of electric refrigerators from Muskegon, Mich., to Long Island City, N. Y. They were described in appellee's bills of lading as "Refrigerators and Cooling Machinery Combined" and are now claimed to be "electric household refrigerator machines." By reason of the provisions of the Interstate Commerce Act (41 Stat. 474, § 400, amending section 1 [49 USCA § 1]), the railroads of the country published and filed with the Interstate Commerce Commission a consolidated freight classification which contains classifications of articles of freight to be transported by them. It was modified and reissued from time to time. Various articles of freight are listed, and after each item describing a particular article or kind of freight, its classification rating is shown. The freight charges for the transportation of each commodity are indexed first under the classification for the name of the commodity, and then the particular item in the classification describing the commodity and providing the rating. When the rating is ascertained, the freight rate for each class, as it may be published by the railroads in their so-called class rate tariffs filed with the Interstate Commerce Commission, determines the freight charges applicable to the shipment.

In the index to "Consolidated Freight Classification No. 6," effective at the time of these shipments, there is an item "Re-frigerators and Cooling or Freezing Apparatus Combined." Reference is made to the page and items for the complete item and rating. On this page, under the main heading "Cooling Boxes, Cooling Rooms and Refrigerators" and a subheading "Refrigerators," item 19, appears in the following terms, "Cooling Boxes or Refrigerators and Cooling or Freezing Apparatus combined, see Note." This item referred to as "refrigerator item" has a rating of fourth class in carloads subject to a minimum weight of 24,000 pounds. On page 328 there is a classification under the general heading "Machinery and Machines," and under a subheading "Ice Making or Refrigerating," there is published another item referred to as a machinery item reading "Cooling or Freezing Machines, Cooling Box or Refrigerator." This item has a rating of fifth class with a carload minimum rate of 24,000 pounds. The Interstate Commerce Commission has held that the refrigerator item above named is applicable to complete electric refrigerators of various makes and to gas refrigerators, and it has also held that the fourth class rates under this item are just and reasonable for transportation. Janney-Semple-Hill & Co. v. Cleveland, C., C. & St. L. Ry. Co., 201 I. C. C. 765; Reinhard Bros. Co., Inc., v. Belt Ry. Co. of Chicago, 192 I. C. C. 698.

The appellee shipped completed electric refrigerators on bills of lading, which it prepared, describing them in the terms of the refrigerator item as "Refrigerators and Cooling Machinery Combined." The same bill of lading provides a separate description for "Refrigerator Cooling Machinery." Its recovery has been upon the basis that it was entitled to the fifth class freight charges, whereas the appellant charged the fourth class basis providing for the "refrigerator" item.

The pleadings raised the issue of whether the articles shipped were "Cooling Boxes or Refrigerators and Cooling or Freezing Apparatus Combined," the fourth class rate being chargeable thereto, or whether they should have been transported on the fifth class rate providing for "Cooling or Freezing Machines, Cooling Boxes or Refrigerators"; also, whether the classification terms had a peculiar or trade meaning generally accepted in the trade and whether they were used in such peculiar or trade meaning in the classification; and whether or not the district court had jurisdiction to determine these questions without resort to and deter-

mination by the Interstate Commerce Commission.

The articles shipped by the appellee, as shown by the exhibits attached to the amended complaint and by the affidavits submitted by the appellant in opposition to the motion for summary judgment, were mechanical refrigerators equipped with a machine or mechanical apparatus to perform the functions of a refrigerant. The District Court found them to be "electrically operated household refrigerators" or "electric refrigerators." In support of the appellee's contention that the machinery item of the classification is applicable, it submitted three affidavits, only one of which is by a person with technical knowledge or training in the refrigerator industry. This affidavit, by its vice president, does not deny that the articles shipped were in fact "refrigerators and cooling or freezing machines combined." He referred to the articles shipped as "electric household refrigerator machines" and states that he considers the articles to be machines. The appellant submitted affidavits, one of which was by a member of the classification committee which prepared and filed the classification on behalf of the carriers, setting forth the history of each of the classification items, showing that their terms have a peculiar or trade sense well recognized commercially in the industry; that they have been used in this sense in the classification in order to make a distinction between articles rated fourth class and those rated fifth class and that the terms have been so understood and accepted and interpreted by this appellee and other shippers, carriers, and the Interstate Commerce Commission. He stated that completely set up mechanical refrigerators have been shipped since 1920, and have been charged and paid for at fourth-class rates. Three engineers of experience in the refrigerator industry described and specified what is known commercially as a "refrigerator and cooling machine or apparatus combined," and testified that the terms used in the classification have a peculiar but well-understood and accepted meaning commercially and are as appellant contends. Railroad agents, by affidavit, said not only that the appellee but other shippers, including well-known manufacturers of electric mechanical refrigerators, have regularly described them as "refrigerators and cooling machines or apparatus combined" when delivering them for transportation.

Uninfluenced by the issues thus raised, the court below held that the appellee's refrigerators came within the refrigerator item, but concluded further that the machinery item was equally appropriate and that since it provided lower rates, it was the item which was applicable to the appellee's shipments. It was necessary in interpreting the tariff to determine in which possible meaning, general or technical, the word "machine" was employed in the classification. It is apparent that the district court's interpretation of the classification terms was at variance with the intention of the carriers and with the decision of the Commission, and the generally accepted interpretation of the terms by railroads, and by the trade. This gives rise to the conclusion that these terms must have a different and peculiar understanding in the trade, and there was presented a question in which sense the terms were employed. The answer raised issues, as did the affidavits in opposition to the motion, as to what was the peculiar trade meaning of these classifications. They presented the question of whether the District Court had jurisdiction to determine these issues or whether they must be passed upon by the Interstate Commerce Commission. The pleadings and affidavits establish that there is a dispute whether the terms of the classification items were used in their ordinary meaning or in accordance with a peculiar or trade usage.

■ It is the rule that, in order to secure uniformity and avoid discrimination between shippers, resort must first be had to the Interstate Commerce Commission, and in the absence of a determination by that expert body, a court is without jurisdiction to interpret the tariffs where there is a question of fact whether words in the tariff are used in their ordinary or in a peculiar, technical or trade sense, or where, because words are used in the latter sense, their interpretation requires a consideration of evidence establishing special facts. Director General v. Viscose Co., 254 U. S. 498, 504, 41 S. Ct. 151, 65 L. Ed. 372. It is only where words of the tariff have an ordinary meaning only, and are employed in that sense so that their interpretation is solely a question of law, involving no issue of fact, that a court has jurisdiction in the first instance. Texas & Pacific Ry. Co. v. Amer. Tie & Timber Co., 234 U. S. 138, 34 S. Ct. 885, 58 L. Ed. 1255; Great No. Ry. Co. v. Merchants' Elevator Co., 259 U. S. 285, 42

S. Ct. 477, 66 L. Ed. 943; Standard Oil Co. v. United States, 283 U. S. 235, 51 S. Ct. 429, 75 L. Ed. 999; U. S. Nav. Co. v. Cunard S. S. Co., 284 U. S. 474, 481, 52 S. Ct. 247, 249, 76 L. Ed. 408; Davis, etc., v. Age-Herald Pub. Co., 293 F. 591, 592 (C. C. A. 5).

In Great Northern Ry. Co. v. Merchants' Elevator Co., supra, the court held that if the construction of the tariff presented solely a question of law, the court had jurisdiction, but if it involved a question of fact or of discretion in technical matters, the Commission had exclusive jurisdiction. In Texas & Pacific Ry. v. American Tie & Timber Co., supra, the issue was whether the general term "lumber" used in the carrier's classification included oak railway cross-ties which were not specifically listed therein, and the court held that it was a question of fact requiring preliminary resort to the Commission. In Davis, Director General, v. Age-Herald Pub. Co., supra, a question of overcharges regarding news print paper was presented, and the dispute was whether a commodity rate upon "paper, viz., paper, printing, calendared or machine glazed" or a class rate upon "news print" paper was applicable. It was there held that the court did not have jurisdiction until the Interstate Commerce Commission decided the question. In U. S. Nav. Co. v. Cunard S. S. Co., supra, it was said that the rule has become settled that: "Questions essentially of fact and those involving the exercise of administrative discretion, which were within the jurisdiction of the Interstate Commerce Commission, were primarily within its exclusive jurisdiction, and, with certain exceptions not applicable here, that a remedy must be sought from the Commission before the jurisdiction of the courts could be invoked." And referring to Great Northern Ry. Co. v. Merchants' Elevator Co., supra: "Such resort, it was said, must be had where a rate, rule, or practice is attacked as unreasonable or as unjustly discriminatory, and also where it is necessary, in the construction of a tariff, to determine upon evidence the peculiar meaning of words or the existence of incidents alleged to be attached by usage to the transaction. In all such cases, the uniformity which it is the purpose of the Commerce Act [49 US CA § 1 et seq.] to secure could not be obtained without a preliminary determination by the Commission."

It is apparent, therefore, that the Interstate Commerce Commission had exclusive jurisdiction to pass upon the issues here presented, and that the District Court lacked jurisdiction to do so.

The court might have followed the practice suggested in Southern Ry. Co. v. Tift, 206 U. S. 428, 27 S. Ct. 709, 51 L. Ed. 1124, 11 Ann. Cas. 846, and Mitchell Coal & Coke Co. v. Penn. R. R. Co., 230 U. S. 247, 248, 33 S. Ct. 916, 57 L. Ed. 1472, and have held in abeyance its decision on the motion for summary judgment until the appellee procured a determination by the Interstate Commerce Commission of the meaning of the classification items. Not having done so, the complaint must be dismissed.

Judgment reversed.