**PENNSYLVANIA R. CO. v. FOX & LONDON, Inc.**

**No. 101.**

Circuit Court of Appeals, Second Circuit.

Jan. 3, 1938.

Ernie Adamson, of New York City (Julius L. Goldstein, of New York City, of counsel), for appellant.

Conboy, Hewitt, O'Brien & Boardman, of New York City (F. W. H. Adams and Peter Keber, both of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff brought this suit against the defendant who shipped fifty-two carloads of metal scrap over its lines from Brooklyn, N. Y., to various points in other states in the Middle West. The defendant shipped each carload under a bill of lading it signed as consignor in which it was named as the order consignee and the party to be notified designated. Each ship-ment was described in the bills of lading as "white metal alloy, scrap," which took a fifth-class tariff rate under the controlling Consolidated Freight Classification, and the amount due under such rate classification was paid by the consignor. Having subsequently discovered, as, it contends, that the metal was in fact aluminum scrap which was classified so as to take a fourth-class, or higher, rate under the published tariff, the plaintiff is trying to collect, by means of this suit, the difference between the fourth-class rate applicable and the fifth-class rate paid.

The issues properly here presented are whether the court had jurisdiction and, if so, whether there was sufficient proof that the commodity shipped was in fact aluminum scrap.

On the question of jurisdiction the appellant insists that the meaning of a published tariff is involved in such way that a preliminary determination as to that must be made by the Interstate Commerce Commission. See Great Northern Railway Co. v. Merchants' Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943; Texas & Pacific Railway Co. v. American Tie & Timber Co., 234 U.S. 138, 34 S.Ct. 885, 58 L.Ed. 1255; Norge Corporation v. Long Island R. Co., 2 Cir., 77 F.2d 312. These cases, however, and others of like import deal with actions by shippers against carriers.

Of course, the Interstate Commerce Commission only has such jurisdiction as has been conferred upon it by Congress, and that does not give it the power to make orders adjudicating claims of carriers against shippers and requiring the payment of such claims. See Davis v. Rochester Can Co., 220 App.Div. 487, 221 N.Y.S. 666, affirmed Mellon v. Rochester Can Co., 247 N.Y. 521, 161 N.E. 166; Laning-Harris Coal & Grain Co. v. St. Louis & San Francisco R. Co., 15 I.C.C. 37. So jurisdiction of such a controversy as this is vested exclusively in the courts. And, moreover, where the terms of the published tariff are themselves unambiguous, the issue must be resolved by reference to the rate published, treating it as established law like any plain statute, leaving only the incidental issue of applicability which is dependent only upon the fact of the nature of the commodity shipped. Properly speaking, no construction of a tariff is involved where the only controversy is whether the commodity shipped is one or another of two

things plainly classified. That was the real issue here, and, because that is so, much of the argument as to tariff construction generally is beside the point.

On the issue of the sufficiency of the proof that what was shipped was in fact aluminum scrap, we find that the record contains evidence clearly sufficient to justify the jury in returning the verdict on which the judgment was rendered. Though the proof was somewhat contradictory, there was ample evidence to enable the jury to find that aluminum scrap was a well-known commodity; that white metal alloy scrap was another and distinct commodity well known; and that these shipments were all of the former kind. A part, though by no means all, of the proof of the nature of the shipments was made by the introduction of two small samples of the metal. It was shown that a sample from each car had been taken but that all had been lost but the two produced. There was evidence to the effect that those two were fairly representative of all the metal shipped. They were, therefore, admissible, and the weight to be given them as evidence was properly left to the jury.

Furthermore, as the defendant was both the consignor and the consignee in the bills of lading, no question as to the proper party to sue can be raised here. Nor is the plaintiff which is by law required to collect the legal rate on every shipment indiscriminately prevented from doing its duty in this respect by any principle of estoppel. · Pittsburgh, C., C. & St. L. R. Co. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 28, 63 L. Ed. 1151. As said in the case just cited, "Estoppel could not become the means of successfully avoiding the requirement of the Act as to equal rates, in violation of the provisions of the statute."

Judgment affirmed.